IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01493-PAB-STV

JOHN NESAVICH d/b/a Nesavich Properties LLC,
JUDY NESAVICH d/b/a Nesavich Properties LLC, and
NESAVICH PROPERTIES, LLC,

    Plaintiffs,

v.

AUTO-OWNERS INSURANCE COMPANY, a Michigan Insurance Company,

    Defendant.

---

## ORDER

---

This matter is before the Court on Auto-Owners' Motion for Summary Judgment [Docket No. 36] filed by defendant Auto-Owners Insurance Company, Plaintiff's [sic] Motion for Leave of Court to File a Surreply in Response to Defendant's Motion for Summary Judgment [Docket No. 65], Plaintiff's [sic] Motion for Reconsideration of Order Re: Plaintiff's [sic] Motion for Defendant to Submit to the Appraisal Provision Pursuant to the Terms of its Policy and Motion to Stay Proceedings Pending Completion of Appraisal [Docket No. 93], and plaintiffs' F.R.C.P. 72(a) Objection to Magistrate's Order (Docket No. 91) [Docket No. 94].

## I. BACKGROUND

This case involves an insurance dispute. Defendant issued a commercial property insurance policy to plaintiffs for a building located in Colorado Springs, Colorado. Defendant's Statement of Undisputed Material Facts ("DSUMF") 1-2; Docket

No. 36 at 2-3, ¶¶ 1-2. Plaintiffs claim that their property was damaged by a hail storm on May 21, 2014. Docket No. 2 at 2, ¶ 7. Approximately fifteen months after the storm, on August 21, 2015, plaintiffs notified defendant about hail damage from the storm. DSUMF 6.

On September 3, 2015, Steven Boyd, Jr., a professional engineer who has since been retained by defendant to testify as an expert, inspected the roof and windows of plaintiffs' property. DSUMF 15. Mr. Boyd prepared a report dated September 28, 2015, which noted that meteorological data showed a hailstorm occurred in the area of the property on May 21, 2014. Docket No. 36-7 at 13-14. He stated that "[s]patter marks generally remain visible for a time period as long as 6 to 9 months after the causal event, and provide the best evidence of the size of the hailstones that impacted the Property as well as the direction from which they fell." *Id*. at 14. Mr. Boyd observed spatter marks during his inspection, but he concluded that "these spatter marks would not be an indicator of the size or direction of the hailstones that fell during the [May 21, 2014 hailstorm] due to the time" that had passed before his inspection. *Id*. at 14-15. Mr. Boyd also noted various instances of indentations, granular loss, and "alligator" cracking on portions of the buildings roof. *Id*. at 3-9; Plaintiffs' State of Additional Disputed Facts ("PSADF") 1-2; Docket No. 79 at 4, ¶¶ 1-2. He concluded, however, that the "roof coverings were not damaged by hailstone impacts attributable" to the May 21, 2014 hailstorm. Docket No. 36-7 at 9. Mr. Boyd did conclude that "west-facing mill finished window sills and mullions were damaged by hailstones impacts attributable" to the May 21, 2014 hailstorm. *Id*. He recommended replacement of the "aluminum snap-in glazing beads for the window sills and mullions" that could be "obtained from a

local metal fabrication shop and installed on the existing windows." Docket No. 36-8 at 14, ¶ 3. With respect to the east-facing windows, by contrast, Mr. Boyd stated that they "may have been impacted by hailstones during another hailstorm event that occurred prior or after" the May 21, 2014 hailstorm. Docket No. 36-7 at 15. Defendant also received a report from Brian N. Strandjord, who "inspected all ten of the rooftop HVAC units and concluded . . . six units did not display any damage that was consistent with natural hail." Docket No. 36-10 at 2, ¶ 5; DSUMF 27.[1] He opined that, "while fins cannot typically be restored to complete original appearance, straightening can restore air flow, performance, and efficiency if done correctly by qualified technicians." *Id*., ¶ 8; DSUMF 28-30. Based on Mr. Boyd's and Mr. Strandjord's findings, Travis Epley of Catastrophe Specialist, a claims adjuster, prepared an estimate of the hail damage to plaintiffs' building. Docket No. 2 at 3, ¶ 14. On October 7, 2015, defendant paid plaintiffs $6,032.49 based on Mr. Epley's estimate of the damage. DSUMF 7; *see also* Docket No. 79-7 at 1 ("Once we completed our assessment of the damages, an estimate was provided to you that included all appropriate repairs and also included an Actual Cash Value payment in the amount of $6,032.49."); Docket No. 89 at 5. This payment included the estimated cost of repairs to the sills and mullions of the windows on only the west-facing side of the building and straightening the condenser fins for the building's roof-top HVAC units. DSUMF 8-9.[2]

---

[1] Plaintiffs purport to dispute DSUMF 27, but they do not provide any contrary evidence. Docket No. 79 at 4, ¶ 15. Accordingly, the Court deems DSUMF 27 admitted. *See* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv.

[2] Plaintiffs purport to dispute DSUMF 9, but they do not actually dispute the claimed fact, namely, that the estimate included only repairs to windows on one side of

3

In response to defendant's damage estimate, plaintiffs commissioned David G. Draper and Steven Thomas to perform a mechanical evaluation and desaturation testing[3] on the building's roof. Docket No. 2 at 3, ¶ 16. Mr. Draper concluded that extensive repairs to the building's HVAC system were necessary, including replacement of several large components. Docket No. 79-4 at 16. Mr. Thomas concluded that one of the four samples taken from the roof showed "hail strike related damage" to the "internal reinforcement layer," but the other three samples were inconclusive. Docket No. 79-15 at 9. Plaintiffs disclosed these reports to defendant before filing suit. Docket No. 91 at 6.

On May 17, 2016, plaintiffs filed their complaint, alleging that defendant breached its insurance contract by failing to fully cover the hail damage and that defendant did so in bad faith. Docket No. 2 at 1, 4-7. Plaintiffs claim that they are entitled to a full roof replacement, replacement of the HVAC units (not just straightening

---

the building. Docket No. 79 at 2, ¶ 2. Accordingly, the Court deems DSUMF 9 admitted. *See* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.iv.

[3] According to Mr. Thomas' report, during desaturation testing, physical samples are taken from the roof and the

> surface of each sample is visually inspected on both the top and bottom to identify areas of potential hailstone impact damages including, but not limited to: punctures, tears, and/or bruises. Each roof sample is weighed and measured for length and width. The roof sample is then outlined on Mylar sheet overlays and each area of concern is marked. The roof sample is desaturated in a vapor degreaser and the reinforcements are extracted. Finally the roof sample and the areas of concern are scientifically scrutinized visually, manually, and microscopically if necessary.

Docket No. 79-15 at 1.

of the condenser fins), and full replacement of the building's windows (not just the frame repair).  Docket No. 36-5 at 12.

On April 10, 2017, plaintiffs filed a motion to compel an appraisal of the hail damage and stay the case pending completion of the appraisal.  Docket No. 26.  On October 2, 2017, defendant filed its motion for summary judgment.  Docket No. 36.  On December 28, 2017, plaintiffs filed their motion seeking to disclose additional expert witnesses.  Docket No. 66.

In January and February 2018, plaintiffs requested leave to file supplemental briefing related to the motion for summary judgment to include evidence obtained during discovery.  Docket Nos. 72, 76.  The Court granted the parties leave to file substitute response and reply briefs related to the motion for summary judgment addressing the additional evidence plaintiffs sought to address.  Docket No. 74, 78;[4] *see also* Docket No. 79, 80.

On March 29, 2018, the Court denied plaintiffs' motion to compel an appraisal as untimely.  Docket No. 90 at 3.  On April 3, 2018, Magistrate Judge Scott T. Varholak denied plaintiffs' motion to disclose additional expert witnesses, finding that such untimely disclosure would prejudice defendant and interfere with the upcoming trial.  Docket No. 91 at 7-8.  On April 6, 2018, plaintiffs moved for reconsideration of the Court's March 29 order denying an appraisal.  Docket No. 93.  On April 10, 2018,

---

[4] Because this replaced the prior briefing and allowed plaintiffs to address the arguments made and authority cited in defendants' notice of supplemental authority, *see* Docket No. 61, the Court will deny as moot plaintiffs' motion to file a surreply in relation to the original summary judgment briefing.  Docket No. 65; *see also* Docket No. 78 ("The parties may discuss whatever legal authority they wish in their substitute briefs, regardless of whether it appeared in their prior briefing.").

plaintiffs filed an objection to the magistrate judge's order.  Docket No. 94.

## II.  ANALYSIS

### A.  Motion for Reconsideration

The Court addresses plaintiffs' motion for reconsideration first because plaintiffs' summary judgment arguments refer to their request for an appraisal.  *See* Docket No. 79 at 6-10.  The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration.  *See Hatfield v. Bd. of Cty. Comm'rs for Converse Cty.*, 52 F.3d 858, 861 (10th Cir. 1995).  It is, however, within the Court's discretion to reconsider its rulings.  *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008) ("The District Court's partial summary judgment ruling was not a final judgment.  Thus, [plaintiff's] motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.").  When doing so, the Court considers whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *See Vigil v. Colorado Dep't. of Corrections*, No. 09-cv-01676-PAB-KLM, 2011 WL 1518660, at *1 (D. Colo. Apr. 20, 2011); *cf. Servants of the Paraclete v. Does*, 204 F. 3d 1005, 1012 (10th Cir. 2000) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.  It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.") (citations omitted).

The Court denied plaintiffs' motion to compel an appraisal as untimely, applying the factors for determining whether an request for alternative dispute resolution ("ADR")

is timely from *City & Cty. of Denver v. Dist. Court,* 939 P.2d 1353, 1369 (Colo. 1997) ("*Dist. Court*"). Docket No. 90 at 3. Plaintiffs' motion for reconsideration simply rehashes arguments that plaintiffs raised or could have raised in their briefing. First, plaintiffs argue that their request was timely because the policy lacks a time limit for requesting an appraisal. Docket No. 93 at 3. Second, plaintiffs argue that an appraisal is not a form of ADR and, therefore, *Dist. Court* does not apply. *Id*. at 5. These arguments are not well taken. Plaintiffs do not address the decision cited by the Court for the proposition that *Dist. Court* applies to determine whether a request for an appraisal is timely, namely, *Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.*, No. 14-cv-01454-RM-KMT, 2015 WL 3619205, at *1 (D. Colo. June 10, 2015); *see also Lim v. Am. Economy Ins. Co.*, No. 13-cv-02063-CMA-KLM, 2014 WL 1464400, at *4 (D. Colo. Apr. 14, 2014). Although plaintiffs note two Colorado trial court decisions finding that requests for arbitration were timely even after litigation was initiated, neither of those cases indicates that the insurers raised the issue of timeliness or discusses the applicability of *Dist. Court* to appraisals. *See Topaz II at the Mall Condominium Association v. American Family Mutual Insurance Co.*, No. 16CV33561 (Denver Dist. Ct., Order filed March 9, 2017), Docket No. 26-2; *Bowles Place LLC v. State Farm Fire and Casualty Co*, No. 16CV31857 (Denver Dist. Ct., Order filed March 30, 2017), Docket No. 26-3.[5] Because plaintiffs have not shown that the Court's prior ruling was

---

[5] The cases discuss whether a party can request an appraisal after filing a lawsuit in analyzing whether the plaintiff had elected the lawsuit as a remedy, *see* Docket No. 26-2 at 2; Docket No. 26-3 at 2, but these discussions are irrelevant here because the Court assumed that plaintiffs' request was not barred by an election of remedies. Docket No. 90 at 2.

clearly in error, the Court will deny plaintiffs' motion for reconsideration.

### B. Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment for two reasons: (1) plaintiffs have not endorsed any expert witnesses on causation and damages and (2) plaintiffs' claim is barred because plaintiffs breached the insurance contract by failing to provide prompt notice. Docket No. 36 at 1-2. The Court limits its discussion to the first issue, which is dispositive.

#### 1. Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the

nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

### 2. *Plaintiffs' Lack of Expert Testimony*

Defendant argues that plaintiffs cannot prove causation because they cannot, without expert testimony, show that damage to their property was caused by the May 21, 2014 hailstorm. Docket No. 36 at 9-14. Specifically, defendant argues that it has put forward evidence that the damage resulting from the May 21, 2014 hailstorm was limited to the costs of repairing the west-facing windows and HVAC units that were included in defendant's estimate and that plaintiffs have failed to rebut these conclusions or show that plaintiffs' damages exceeded defendant's estimate. *Id*. at 11-13. Defendant argues that, because plaintiffs cannot prove their breach of contract claim, plaintiffs' bad faith claims must also fail. *Id*. at 14.

In response, plaintiffs admit that they "have not endorsed experts in this case," other than Steven Patrick, because "they did not wish to expend the resources in money, time, and additional discovery that would be required before they knew what the outcome of the motion for stay and appraisal would be." Docket No. 79 at 7. In the absence of an appraisal, plaintiffs argue that they nonetheless "need not endorse an expert in this case to prove the physical damages alleged in the Complaint" because

9

"causation can be proven by direct or circumstantial evidence proffered through the layperson observations of witnesses." *Id*. at 10. Plaintiffs argue that "a layperson can simply observe that a hailstorm took place, then view damage that appeared consistent with that hail." *Id*. at 11. Plaintiffs do not dispute, however, that they must prove that the damage resulted from the specific May 21, 2014 hailstorm as alleged in their insurance claim and subsequent complaint. *See id*.; Docket No. 89 at 2 ("Plaintiffs sued Defendant for breach of contract, common law insurance bad faith and statutory C.R.S. §§ 10-3-1115 and 10-3-1116 bad faith related to Defendant's adjustment of Plaintiff's [sic] May 21, 2014 hail claim."). Plaintiffs argue that several sources of evidence show damage to windows and the HVAC units beyond the damage covered by defendant's estimate: Mr. Boyd's report; Mr. Patrick's expert opinions in his report; Mr. Rothbauer's observations of the roof and statement that the HVAC systems were damaged; Mr. Draper's observations and photographs of damage to the HVAC units consistent with hail damage; and Mr. Price's statement that he saw damage consistent with the hail to the windows on both the front and back of the building. Docket No. 79 at 11-13.

### a. *Admissibility of Evidence*

In its reply, defendant argues that the evidence plaintiffs seek to rely on, other than Mr. Price's stated observations of consistent damage, is inadmissible because it is hearsay or lay opinion testimony that does not satisfy Fed. R. Evid. 701. Accordingly, the Court reviews the challenged evidence to determine whether it is admissible before reaching the merits.

One source that plaintiffs rely upon are certain observations and information

10

from Mr. Boyd, a defense expert. See Docket No. 36-7 at 10. In particular, plaintiffs cite Mr. Boyd's acknowledgment that meteorological stations showed a hailstorm near plaintiffs' property on May 21, 2014 and that Mr. Boyd observed "alligator" cracking to parts of the roof. PSADF 1-2; Docket No. 79 at 12. Defendant argues that plaintiffs cannot rely on the unsigned copy of Mr. Boyd's report attached to plaintiffs' response because such report is unauthenticated and contains improper hearsay evidence. Docket No. 80 at 4. The Court rejects this argument because defendant relied on the same report, albeit a signed copy, in its opening briefing. *Compare* Docket No. 36-7 *with* Docket No. 79-1.

Plaintiffs disclosed Mr. Patrick "as [their] expert in the areas of claims adjustment and insurance industry standards including how this claim was adjusted and causation." PSADF 4. In his report, Mr. Patrick criticizes Mr. Boyd's report for appearing to consider only "functional damage," when other damage, such as cosmetic damage, may also be covered. Docket No. 42-5 at 5. Although plaintiffs refer to this criticism in their briefing, they do not argue that summary judgment should be denied based on the potential recoverability of cosmetic damages or that their claim is based on such damage. *See* Docket No. 79 at 5, ¶ 3.[6] Instead, plaintiffs seek to rely on Mr. Patrick's opinions that photographs he reviewed show that "hailstones of greater size than 1 ¼ inch must have hit the building and damaged it." *Id.* at 11-12 (quoting Docket No. 79-5 at 6-7). Mr. Patrick also states that the "desaturation report clearly shows damage

---

[6] Even if plaintiffs had made this argument, it would not prevent summary judgment because, as discussed below, plaintiffs lack evidence that any cosmetic damage to the building was attributable to the May 21, 2014 hailstorm.

11

consistent with hail damage to the modified bitumen roof." *Id*. at 12 (quoting Docket No. 79-5 at 7). Defendant argues that Mr. Patrick is "disclosed 'as an expert in claims adjustment and insurance industry standards,' not construction or engineering." Docket No. 80 at 8. The Court agrees that plaintiffs have not shown that Mr. Patrick's opinions about the presence of hail damage to the building and the size of hail stones are admissible. Mr. Patrick has no identified qualifications to offer testimony about roofs or hail damage pursuant to Fed. R. Civ. P. 702. *See* Docket No. 42-5. Moreover, the opinions that plaintiffs seek to rely on concerning the size of hail that struck the roof and the findings of the desaturation report require specialized knowledge and, therefore, are not a proper subject of lay opinion testimony. Fed. R. Evid. 701(c); *see also HM Hotel Properties v. Peerless Indem. Ins. Co.*, 2013 WL 4507602, at *4 (D. Ariz. Aug. 23, 2013), *aff'd*, 624 F. App'x 520 (9th Cir. 2015) (finding that evidence about damage to a roof and repairs necessary to fix it requires "specialized knowledge [that] is beyond the ken of an average juror or lay witness." (citing *Wickman v. State Farm Fire & Cas. Co .*, 616 F. Supp. 2d 909, 920-21 (E.D. Wis. 2009)). Accordingly, the Court finds Mr. Patrick's opinions about roof damage inadmissible and will disregard them.

Mr. Rothbauer inspected the building and other nearby properties for hail damage, but he was not disclosed by plaintiffs as an expert witness. Plaintiffs seek to rely on Mr. Rothbauer for both his observations when inspecting the property and the conclusions that he reached. Plaintiffs' Statement of Additional Disputed Facts ("PSADF") 6-8; Docket No. 79 at 5-6, ¶¶ 6-8. Specifically, Mr. Rothbauer opined that the "windows and HVAC units . . . were damaged by the May 21, 2014 hail storm and

require replacement." Docket No. 79-9 at 5, ¶ 12. While Mr. Rothbauer's visual observations about the condition of the windows and HVAC units are admissible, the Court finds that his opinions about the cause of the damage to and need for replacement of the windows and HVAC units depends on specialized knowledge and is not admissible as lay opinion testimony under Fed. R. Evid. 701(c). *See HM Hotel Properties*, 2013 WL 4507602, at *4.

Mr. Draper also inspected the building, but he was not disclosed as an expert by plaintiffs. Docket No. 79 at 13. His report contains photographs of the HVAC systems and states an opinion that the "areas of the condenser coils with damage on [four HVAC units] are substantial enough to restrict airflow and are consistent with the damage that hail causes and with the specific storm in question." Docket No. 79-4 at 4. While Mr. Draper's observations and photographs are admissible, the Court finds his opinions likewise are based on specialized knowledge and are therefore inadmissible under Fed. R. Evid. 701(c).

### b. Whether the May 21, 2014 Hailstorm Damaged Plaintiffs' Roof

Based on Mr. Boyd's report, plaintiffs can present evidence that a hailstorm occurred on May 21, 2014 and that their building was damaged by hail. But, as defendant argues, plaintiffs lack evidence that ties the May 21, 2014 hailstorm to roof damage, damage to the east-facing windows, or damage to the HVAC units. Plaintiffs cite *Daubert v. Merrell Dow Pharm*., 43 F.3d 1311, 1314 (9th Cir. 1995), for the proposition that "[c]ausation can be proved even when we don't know precisely *how* the damage occurred, if there is sufficiently compelling proof that the agent must have

caused the damage." Each of the people who inspected the roof did so long after May 21, 2014. Mr. Rothbauer inspected the building in August 2015, Mr. Price in October 2015, and Mr. Draper in April 2016. Docket No. 36-5 at 5; Docket No. 79-3 at 6, 18:2-8; Docket No. 79-4 at 3. Mr. Patrick never inspected the roof. Docket No. 79-5 at 1. None of these witnesses has any basis for testifying that the damage they believe is hail damage occurred because of the May 2014 hailstorm as opposed to hailstorms before or after May 2014. In fact, the evidence in the summary judgment record suggests that hailstorms struck the building after May 2014 and before the inspections of plaintiffs' witnesses. According to Mr. Boyd's uncontradicted report, spatter marks "generally remain visible for a time period as long as 6 to 9 months after the causal event." Docket No. 36-7 at 14. Mr. Boyd observed these spatter marks in September 2015, which suggests that they were caused by a hailstorm in 2015, not 2014. *See, e.g.*, Docket No. 36-8 at 3 (photo of spatter mark). Plaintiffs do not explain how a reasonable jury could conclude, based on the admissible evidence in the summary judgment record, that the May 21, 2014 hailstorm caused the alleged damage as a result of anything other than speculation.[7] Such evidence is insufficient to show a genuine issue of material fact for trial. *See M.G. v. Young*, 826 F.3d 1259, 1264 (10th Cir. 2016) (affirming the grant of summary judgment where, based on the evidence in the summary judgment record, a "jury could only" reach its conclusion on an essential element "through impermissible speculation"). Even where a party relies on expert

---

[7] Although Mr. Strandjord concluded that the HVAC units were damaged by hail, there is no evidence in the summary judgment record that Mr. Strandjord connected such hail damage to the May 21, 2014 hailstorm. *See* Docket No. 36-10 at 2, ¶ 5.

testimony to determine the most likely cause of an event, an expert "must provide objective reasons for eliminating alternative causes." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1237 (10th Cir. 2005). Plaintiffs' witnesses do not provide evidence that it is "more than mere possibility" that the May 21, 2014 hailstorm caused the alleged damage, that allows an "inference to the best explanation for the cause," "eliminate[s] other possible sources as highly improbable," or "demonstrate[s] that the cause identified is highly probable." *Id*. at 1238. The Court agrees with defendant that plaintiffs have failed to show a genuine issue of material fact that defendant is entitled to summary judgment on plaintiffs' breach of contract claim. The Court additionally agrees with defendant that, given defendant is entitled to dismissal of plaintiffs' breach of contract claim, it is also entitled to summary judgment on plaintiffs' bad faith claims. Therefore, the Court will grant defendant's motion for summary judgment.[8]

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Auto-Owners' Motion for Summary Judgment [Docket No. 36] is **GRANTED**. It is further

**ORDERED** that Plaintiff's [sic] Motion for Leave of Court to File a Surreply in Response to Defendant's Motion for Summary Judgment [Docket No. 65] is **DENIED** as moot. It is further

---

[8] Because the Court grants summary judgment to defendant, the Court will overrule plaintiffs' objections to the magistrate judge's order to make untimely designations of experts. Plaintiffs did not argue that they should avoid summary judgment on the basis of this potential testimony; rather, plaintiffs argued that these individuals' lay testimony should defeat summary judgment. *See* Docket No. 79 at 11-15.

**ORDERED** that Plaintiff's [sic] Motion for Reconsideration of Order Re: Plaintiff's [sic] Motion for Defendant to Submit to the Appraisal Provision Pursuant to the Terms of its Policy and Motion to Stay Proceedings Pending Completion of Appraisal [Docket No. 93] is **DENIED**. It is further

**ORDERED** that the objections contained in plaintiffs' F.R.C.P. 72(a) Objection to Magistrate's Order (Docket No. 91) [Docket No. 94] are **OVERRULED** as moot. It is further

**ORDERED** that judgment shall enter in favor of defendant and against plaintiffs. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED August 6, 2018.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge